# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JENNIFER E. DeBACKER,**
    **Plaintiff,**

*vs*.                                     **CIVIL ACTION NO. 1:12CV9**

**FEDERAL BUREAU OF INVESTIGATION,**
    **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

This matter is before the undersigned United States Magistrate Judge pursuant to Defendant Federal Bureau of Investigation ("Defendant's") Motion to Dismiss or, alternatively, for Summary Judgment.

### I. Procedural History

On the 11th day of January, 2012, Plaintiff, proceeding *pro se*, filed her Complaint in this Court against Defendant [DE 1], along with a motion for leave to proceed IFP [DE 2]. IFP was granted and summonses were issued for Defendant on February 16, 2012. Summonses were executed on February 21, 2012 [DE 11].

Defendant filed its "Motion to Dismiss or, alternatively, for Summary Judgment" on April 23, 2012 [DE 14]. On April 26, 2012, the Court sent Plaintiff a Roseboro Notice, advising her of her right to file counter-affidavits or other responsive material, and of the fact that her failure to respond might result in the entry of dismissal or summary judgment against her. [DE 18]. Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). On May 21, 2012, Plaintiff filed a document the Court interprets as her Response to the Motion to Dismiss or for Summary Judgment [DE 21]. On June 4, 2012, Defendant filed its Reply to Plaintiff's Response to Motion to Dismiss or for Summary Judgment [DE 22]. The matter was referred to the undersigned United States Magistrate Judge by

United States District Judge Irene M. Keeley on September 25, 2012 [DE 24].

## II. Facts

In summarizing the facts, the Court resolves all disputed factual issues in the plaintiffs' favor. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994). Plaintiff's Complaint references her original EEO case, which she attached. To summarize, on September 28, 2009, Plaintiff went to the Employee Assistant Program ("EAP") office for help filling out a form. She explained the issue regarding the form to EAP counselor Mike Harper ("Harper"). Harper asked her questions while she continued explaining what she wanted. Harper asked if she felt depressed, and she said "yeah." Harper asked her if she thought of suicide, and she said, "yeah." Harper asked if she would "do it, with a gun" and she said "yeah. All this time, however, Plaintiff was simply trying to explain the forms and to get Harper's assistance in filling them out, and he kept interrupting and asking her questions. Harper then told Plaintiff he would not let her leave the office because she had admitted she was a threat to herself. Plaintiff told Harper she had not made such an admission. Harper told her she could either admit herself, go to a psychiatrist, or he would commit her. Plaintiff said she was not going to commit herself again, having done that three years earlier, and she would not allow them to commit her either, because she was fine.

Harper brought in another EAP counselor, whom he told Plaintiff admitted having suicidal ideations, owned a gun, and implied she would use it after she had made changes to her will. He said she refused voluntary treatment and now denied any threat or mention of a gun. The two counselors were in agreement, so Plaintiff "wasn't going to argue with them." She just got up and said she was sorry she ever went into the EAP office and would not be back. She went to her unit supervisor and asked if she could leave for the day. The supervisor said she could. Plaintiff went back to her desk,

cleaned it off, and left work at approximately 12:30. On her way home she stopped at the bank then went home and made some phone calls. After her first phone call a police officer showed up at her house and asked if everything was ok. She told him she was fine and explained what had happened. He asked if she had a gun in the house and she told him she did. The officer then left.

Plaintiff subsequently did some chores, getting gas, and stopping at a store. She went home and took a shower. Two more police officers then came to her door. They asked where the gun was, handcuffed her, and took her to the Summit Center. She sat handcuffed in a room waiting for the court appointed attorney to come in. The attorney told Plaintiff she could either admit she was a threat to herself and voluntarily go to the hospital or request a hearing. Plaintiff said she was fine and wanted a hearing. Harper, a social worker for the Summit Center, and possibly the mental hygiene commissioner, Jonathan Fittro, were in the hallway talking. The social worker came back in and asked a few questions. The attorney then came back in and told Plaintiff again that she could go to the hospital voluntarily or have a hearing. Plaintiff said she wanted the hearing. Harper, the social worker, the lawyer, and the mental hygiene commissioner all came in the room.

Harper testified under oath that Plaintiff reported bing very depressed, hopeless, helpless, and worthless; and reported crying all the time and not sleeping. She had refused treatment and made decisions that negatively impacted her employment. She stated that she wanted to kill herself. She had a plan to use a gun, had access to the gun, and left work very angry to go home. She had stated she thought about killing herself all day that day and the day before. She had been hospitalized twice before for depression/suicidal ideation.

Hygiene Commissioner Fittro asked the social worker if she agreed with Harper's testimony, to which she replied she did. Plaintiff "tried explaining [her] actions for the day were not actions

of someone who is an imminent threat to themselves but Jonathan would not listen." Jonathan Fittro, the Mental Hygiene Commissioner, told Plaintiff she could either admit herself into the hospital or he was going to commit her. She refused to go to the hospital voluntarily. At 9:00 p.m. an officer took her to Sharpe Hospital, where she was admitted. The next day she talked to a psychiatrist and therapist who both agreed she should not be there and both could not believe she was even committed. The next day she was sent to Fairmont General Hospital where she saw another psychiatrist and another therapist who both agreed she should not have been committed. One psychiatrist told her he would testify on her behalf.

### III. EEO Procedure

Plaintiff timely met with an EEO counselor on October 13, 2009. Her complaint was timely filed on November 3, 2009. Plaintiff was sent a letter on January 7, 2010, advising her that the EEO investigation of her complaint against the FBI had begun. The specific allegation being investigated was stated as:

> Whether complainant was discriminated against based on her disability (mental) when on September 28, 2009, after meeting with an Employee Assistance Counselor, her right to confidentiality was violated causing her to be involuntarily committed for psychiatric care.

Plaintiff was specifically advised that if the allegation was not properly identified that she was to notify the EEO in writing within 15 calendar days. She was also advised that upon completion of the investigation, she would receive a copy of the Report of Investigation ("ROI"), and could, at that time, request a hearing before an EEOC Administrative Judge, who would issue a decision on the complaint, or request a final agency decision by the Department of Justice ("DOJ") without a hearing.

Plaintiff was also expressly advised of her right to file a civil action in an appropriate United States District Court:

(1) within 90 days of receipt of a final action on [the] complaint if no appeal has been filed;

(2) after 180 days from the date of filing [the complaint] if an appeal has not been filed and final action has not been taken;

(3) within 90 days of receipt of the EEOC's final decision on an appeal; or

(4) after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

In a sworn, written statement, Plaintiff stated that she had been advised of the investigation of her case by the Office of Equal Employment Opportunity Affairs of the FBI. She stated:

> I understand that the allegation accepted for the allegation accepted [sic] is whether I was discriminated against based on disability (mental) on September 28, 2009, after meeting with an Employee Assistance Counselor, my right to confidentially was violated causing me to be involuntarily committed for psychiatric care.

On February 1, 2011, Administrative Judge Pamela von-Borcke entered an Order to Show Cause in Plaintiff's matter. (Government Exhibit 5). It states that on September 13, 2010, an Order was issued in reference to the claim setting forth the procedures and regulations governing the processing of the hearing request and advising that failure to follow the orders of the Administrative Judge may result in sanctions.

On October 5, 2010, the Agency propounded its first set of discovery requests and notice of deposition. Plaintiff failed to respond. She subsequently advised that she had moved and had not received the requests. On or about October 20, 2010, the Agency provided Plaintiff a second copy of the discovery requests. At her November 15, 2010, deposition she agreed to provide the Agency

her discovery responses shortly thereafter. As of January 13, 2011, the Agency had received no responses. The Agency filed a motion to dismiss based on Plaintiff's failure to participate in discovery. The Administrative Judge gave the plaintiff 10 days to respond to the requests or to show cause why her complaint should not be dismissed based on failure to cooperate.

The Administrative Judge expressly stated:

> Notice is hereby given that failure to timely respond to this Order will result in the dismissal of the Complainant's request for a hearing and remand to the Agency for issuance of a final Agency decision pursuant to 29 C.F.R. section 1614.109.

(Government Exhibit 5).

On February 17, 2011, Administrative Judge von Borcke entered an Order of Dismissal pursuant to 29 C.F.R. section 1614.109(f)(3) for Plaintiff's failure to cooperate as outlined in the Order to Show Cause dated February 1, 2011. She also failed to respond to the Order to Show Cause. Her request for hearing before the EEOC was therefore dismissed and the Agency was to issue a Final Agency Decision ("FAD") in the matter.

On April 4, 2011, an FBI Complaint Adjudication Officer wrote to Plaintiff advising again that the Administrative Judge had dismissed her hearing request for failure to cooperate, and that, pursuant to 29 CFR section 1614.110(b) he would issue a final decision on her complaint. She was advised of her right to appeal the Administrative Judge's decision to the EEOC within 30 days. She was advised that she also had the right to file a civil action in the appropriate United States District Court within 90 days of the date of the Agency decision, provided she had not yet filed an appeal with the EEOC. She was also expressly advised:

> If you have already filed an appeal with the EEOC, you may file in federal court only after 180 days have passed from the date of filing an appeal with the EEOC with no final decision by the Commission.

("Government Exhibit 7).

On July 13, 2011, Plaintiff was advised by letter of the final Department of Justice decision, which stated:

> [T]he record evidence fails to support complainant's claims that the Federal Bureau of Investigation discriminated against her based on her disability or perceived disability in any of the instances cited in her complaint. Relief is denied.

Plaintiff was again expressly advised of her rights of appeal. She had the right to appeal to the EEOC within 30 days of the date she received the decision, <u>or</u> she had the right to file a civil action in the appropriate United States District Court within 90 days of the date she received the decision.

Most importantly, she was advised that if she <u>did</u> appeal the decision to the EEOC, she could then file a civil action in the United States District Court within 90 days of the day she received the Commission's final decision on the appeal, or <u>after</u> 180 days from the date she filed the appeal with the Commission, if the Commission had not made a final decision by that time.
(Government Exhibit 8).

Defendant attached as Government Exhibit 9, the Declaration of Craig M. Barkley, Esq., Attorney Advisor for the Compliance and Control Division in the Office of Federal Operations, Equal Employment Opportunity Commission ("OFO"). Mr. Barkley certified under penalty of perjury that Plaintiff filed an appeal with the OFO on August 22, 2011, which was received on August 25, 2011. As of April 11, 2012, the OFO had not rendered a decision in the matter.

Plaintiff filed her Complaint in this Court on January 11, 2012.

Plaintiff, in her Response to Defendant's Motion to Dismiss did not address the Defendant's arguments regarding her failure to follow procedure, but only reiterated her claims of discrimination.

## III. ISSUE

Defendant first argues that Plaintiff's Complaint is untimely (premature) as filed with the District Court in that it violates the 180-day waiting requirement of 29 CFR section 1614.407(d).

Defendant next argues that Plaintiff has not exhausted her administrative remedies regarding newly-raised allegations.

Defendant finally argues that even assuming Plaintiff's Complaint is timely, Defendant's actions leading to Plaintiff's involuntary hospitalization did not constitute disability discrimination.

## IV. STANDARD OF LAW

Defendant moves for dismissal of Plaintiff's Complaint due to failure to exhaust. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) examines whether the complaint fails to state facts upon which jurisdiction can be founded. It is the plaintiff's burden to prove subject matter jurisdiction. See Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., 523 F.3d 453 (4th Cir. 2008). When, as here, a Rule 12(b)(1) motion challenges the sufficiency of the plaintiff's allegations - - not their truth - - the allegations are assumed to be true, and "the plaintiff, in effect, is afforded the same procedural protection as he would receive" on a motion to dismiss "under . . . Rule 12(b)(6)." Kerns v. United States, 585 F.3d 187 (4th Cir. 2009). The Court " may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765 (4th Cir. 1991). The Court may consider documents attached to the motion to dismiss, "so long as they are integral to the complaint and authentic." Phillips v. Pitt County Memorial Hospital, 572 F.3d 176 (4th Cir. 2009). Plaintiff has not challenged the authenticity of any of the attachments to the defendant's motion.

## V. ANALYSIS

The Rehabilitation Act governs disability discrimination in federal employment. In order to determine whether a federal employer has discriminated under the Rehabilitation Act, courts employ the same standards set out under the Americans with Disabilities Act ("ADA"). See Hooven-Lewis v. Caldera, 249 F.3d 259 (4th Cir. 2001). Before a federal employee may sue under the ADA, she must exhaust her administrative remedies. See 42 U.S.C. section 2000e-5(f)(1); 29 U.S.C. section 626(d). A federal employee must contact an EEO counselor to initiate an informal complaint within 45 days of the alleged discrimination. 29 C.F.R. section 1614.105(a)(1). If informal counseling is unsuccessful, the employee must file a formal complaint with the agency within 15 days of receiving notice to do so. 29 C.F.R. section 1614.105(a) and (b).

The formal administrative complaint must be in writing, identify the parties, and describe "the action or practices complained of." Jones v. Calvert Grp., Ltd., 551 F.3d 297 (4th Cir. 2008). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Id. "Only those discrimination complaints . . . reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." Id. A plaintiff's failure to exhaust her administrative remedies deprives the Court of subject matter jurisdiction over her claims. Id.

The agency investigates the claim, and if it concludes there was no discrimination, it issues a final agency decision to that effect. See 29 C.F.R. sections 1614.108-110; Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006).

The Federal employee "may then appeal the agency's decision to the OFO" or may "opt-out of the administrative process at this point by filing a de novo civil action. Laber at 416 & n.9 (citing

9

29 C.F.R. sections 1614.401(a), 1614.407(a); 42 U.S.C. section 2000e–16(c)). If the employee chooses to appeal the decision to the EEOC, the employee may file a civil action with the district court <u>after</u> 180 days have elapsed from the filing of the appeal with the EEOC or within 90 days of receiving the EEOC's final decision. 29 C.F.R. section 1514.407(c).

The allegations contained in the administrative charge of discrimination generally limit the scope of any subsequent judicial complaint. <u>King v. Seaboard Coast Line R.R.</u>, 538 F.2d 581 (4th Cir. 1976)(stating that a subsequent civil suit "may encompass only the 'discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge'"). Only those claims stated in the initial administrative charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent lawsuit. <u>Evans v. Technologies Applications & Service Co.</u>, 80 F.3d 954 (4th Cir. 1996)(affirming the district court's dismissal of some of the plaintiff's claims because they were outside the scope of her original EEOC charge and were therefore time barred.).

Exhaustion of administrative remedies is a statutory prerequisite to properly invoke the jurisdiction of the federal court. <u>See</u>, <u>e.g.</u>, <u>Davis v. N.C. Dept. of Corr.</u>, 48 F.3d 134 (4th Cir. 1995). The Fourth Circuit has emphasized:

> The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent . . . lawsuit. Rather, Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation. First, an administrative charge notifies the employer of the alleged discrimination. This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. It also prevents the employer from later complaining of prejudice, since it has known of the allegations from the very beginning. Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.

Chacko v. Patuxent Institution, 429 F.3d 505 (4th Cir. 2005). As the EEO has the specific authority to investigate EEO complaints and take necessary action to reach a resolution of the claims, see 29 C.F.R. section 1614.106 *et seq.*, permitting a federal complaint to include allegations that were outside the scope of the predicate EEO complaint would circumscribe the EEO's purpose as well as deprive the federal agency of notice of the plaintiff's charges. See Dorsey v. Pinnacle Automation Co., 278 F.3d 830 (8th Cir. 2002)("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge."). When a claim exceeds the scope of the administrative charge and any charge that would naturally have arisen from an investigation thereto, it is procedurally barred. Dennis v. County of Fairfax, 55 F.3d 151 (4th Cir. 1995).

After the EEOC provides its final decision the complainant may appeal to the OFO or file a lawsuit. See 29 C.F.R. section 1614.407. If the complainant opts for an OFO appeal, she may only file a lawsuit (1) within 90 days of a final decision on the appeal, or (2) 180 days *after* she filed the appeal. 29 C.F.R. section 1614.407(c)&(d).

On August 22, 2011, Plaintiff filed her appeal with the OFO. The OFO received the appeal on August 25, 2011. On January 11, 2012, 142 days after she filed her appeal, she filed the action in this Court. Because she did not wait 180 days or for a decision on her appeal, the Court must dismiss this action for lack of subject matter jurisdiction.

Defendant also argues that Plaintiff has presented allegations in her Complaint in this Court that were never raised at the administrative level below. Plaintiff originally claimed discrimination based on mental disability. The original allegation is as follows:

> Whether complainant was discriminated against based on her disability (mental) when on September 28, 2009, after meeting with an Employee Assistance Counselor, her right to confidentiality was violated causing her to be involuntarily committed for psychiatric care.

Plaintiff was given the opportunity to notify the agency if the complaint was not properly identified. In her sworn statement, however, she stated:

> I understand that the allegation accepted for the allegation accepted [sic] is whether I was discriminated against based on disability (mental) on September 28, 2009, after meeting with an Employee Assistance Counselor, my right to confidentially was violated causing me to be involuntarily committed for psychiatric care.

In Plaintiff's Complaint filed in this Court, she claims the counselors' "deception has led to a hostile working environment. Their lack of candor caused a misconception of my character. I am unable to get a better job because of the rumors and gossip created from their lies. I volunteer for special projects at work but don't get picked. I've lost my gun and my gun rights. I can't volunteer at the organization that I am interested in."

Plaintiff appears to newly allege she has been subjected to a hostile working environment and retaliation. These claims were never raised at the administrative level. Significantly, in her administrative action, Plaintiff claimed the date on which the most recent alleged discrimination took place was September 28, 2009, the date she spoke with Harper. Insofar as Plaintiff appears to seek judicial redress for discriminatory acts that have occurred since the filing of her administrative charge in September 2009, she has failed to properly invoke the jurisdiction of this court because she has not exhausted her administrative remedies with respect to these new claims.

Plaintiff had not exhausted her administrative remedies prior to filing her Complaint in this Court. Accordingly, she has not properly invoked this jurisdiction of this court. The undersigned therefore recommends that Defendant's Motion to Dismiss be granted and any other pending

motions be terminated.

Because the undersigned finds the Court lacks subject matter jurisdiction, Defendant's alternative argument regarding the merits of the underlying discrimination case is not addressed.

### V.  Recommended Decision

In accord with the reasons herein stated, the undersigned recommends that Defendant's Motion to Dismiss" be  **GRANTED**  and all other motions be terminated.

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection.  A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge.  Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation.  28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to send a copy of this Report  and Recommendation to Plaintiff *pro se* and counsel of record.

Respectfully submitted this 26th   day of October, 2012.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE